# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| LADYNA RIVERA o/b/o H.R., a minor, | : | Case No. 3:11-cv-163 |
| | : | District Judge Thomas M. Rose |
| Plaintiff, | | Magistrate Judge Michael J. Newman |
| | : | |
| vs. | | |
| | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND SUPPORTED BY SUBSTANTIAL EVIDENCE, AND AFFIRMED; AND (2) THIS CASE BE CLOSED**

This is a Social Security disability benefits appeal brought pursuant to 42 U.S.C. § 405(g) by Plaintiff Ladyna Rivera ("Plaintiff") on behalf of her minor child, H.R.[2] At issue is whether the Administrative Law Judge ("ALJ") erred in finding H.R. "not disabled" and therefore unentitled to Child's Supplemental Security Income ("Child's SSI").

This case is before the Court upon Plaintiff's Statement of Specific Errors (doc. 9), the Commissioner's Memorandum in Opposition (doc. 14), Plaintiff's Reply (doc. 15), the administrative record[3] (doc. 8), and the record as a whole.

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendation.

[2] Fed. R. Civ. P. 5.2 mandates that the name of an individual known to be a minor may only be referenced by his or her initials.

[3] The Court, when citing to the administrative record herein, will reference only the

1

# I. PROCEDURAL HISTORY

In July 2006, Plaintiff filed a claim for benefits alleging an onset date of January 24, 2000, the date H.R. was born. PageID 109-11. Plaintiff contends that H.R. is disabled due to attention deficit hyperactivity disorder ("ADHD"[4]), a learning disability, and because she is a slow learner. *See* PageID 167.

Following initial administrative denials of Plaintiff's application, Plaintiff received a hearing before ALJ Thomas McNichols, II. H.R. and Plaintiff testified at the hearing. PageID 89-119. On March 5, 2010, the ALJ issued his decision -- that H.R. was "not disabled." PageID 49-67.

Specifically, the ALJ's "Findings," which represent the rationale of his decision, are as follows:

1. The claimant was born on January 24, 2000. Therefore, she was a school-age child on July 10, 2006, the date application was filed (20 CFR 416.926a(g)(2)).

2. The claimant has not engaged in substantial gainful activity since July 10, 2006, the application date (20 CFR 416.924(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: attention deficit hyperactivity disorder, oppositional defiant disorder[5] ["ODD"], and a learning disorder (20 CFR 416.924(c)).

---

PageID.
   [4]ADHD is a childhood mental disorder characterized by inattention (such as distractibility, forgetfulness, not finishing tasks, and not appearing to listen), by hyperactivity and impulsivity (such as fidgeting and squirming, difficulty in remaining seated, excessive running or climbing, feelings of restlessness, difficulty awaiting one's turn, interrupting others, and excessive talking) or by both types of behavior. *See* Dorland's Illustrated Medical Dictionary 528 (31st ed. 2007).
   [5]ODD is defined as "a recurrent pattern of negativistic, defiant, disobedient, and hostile behavior toward authority figures that persists for at least 6 months." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders § 313.81 (4th ed. 1994) (hereinafter "DSM-IV").

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).

5. The claimant does not have an impairment or combination of impairments that functionally equals the listings (20 CFR 416.924(d) and 416.926a).

6. The claimant not been disabled, as defined in the Social Security Act, since July 10, 2006, the date the application was filed (20 CFR 416.924(a)).

PageID 52-66 (brackets added).

In determining that H.R's impairments were not functionally equivalent to a listed impairment, the ALJ found:

1. H.R. has less than marked limitation in acquiring and using information.

2. H.R. has less than marked limitation in attending and completing tasks.

3. H.R. has less than marked limitation in interacting and relating to others.

4. H.R. has no limitation in moving about and manipulating objects.

5. H.R. has no limitation in the ability to care for herself.

6. H.R. has no limitation in health and physical well-being.

PageID 59-66.

Thereafter, the Appeals Council denied Plaintiff's request for review, making the ALJ's non-disability finding the final administrative decision of the Commissioner. PageID 36-38. *See Casey v. Sec'y of H.H.S.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Plaintiff filed this timely appeal on May 15, 2011. Doc. 1.

On appeal, Plaintiff asserts three assignments of error. First, Plaintiff argues that the ALJ failed to give appropriate weight to H.R.'s treating physician, John Pascoe, M.D., a pediatrician at the Children's Medical Center Developmental Pediatrics Clinic, and did not articulate a valid

3

reason for doing so. Second, Plaintiff contends the ALJ erred in finding that H.R. did not meet or functionally equal the Listings for mental retardation (112.05), personality disorder (112.08), and/or ADHD (112.11). Finally, Plaintiff suggests that the ALJ erred by not utilizing the services of a Medical Expert ("M.E.") in formulating his analysis.

## II. APPLICABLE LAW

### A. Substantial Evidence Standard

The Court's inquiry on a Social Security appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria. 42 U.S.C. § 405(g); *Bowen* v. *Comm'r of Soc. Sec.,* 478 F.3d 742,745-46 (6th Cir. 2007). In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. *Id.*

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Thus, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

4

**B.  Determining a Child's Eligibility for SSI**

The Social Security regulations set forth a three-step sequential analysis for determining whether a child is disabled for purposes of Child's SSI benefits:

1. Is the child is engaged in any substantial gainful activity? If so, benefits are denied;

2. Does the child have a medically severe impairment or combination of impairments? If not, benefits are denied; and

3. Does the child's impairment meet, medically equal, or functionally equal any in the Listing of Impairments, Appendix I of 20 C.F.R. pt. 404, subpt. P. 20 C.F.R. § 416.924(a)? If so, benefits are granted.

20 C.F.R. §§ 416.924(a)-(d).

In determining whether a child's impairment(s) functionally equal the Listings, the ALJ must assess the child's functioning in six domains:

1. Acquiring and using information;

2. Attending and completing tasks;

3. Interacting and relating with others;

4. Moving about and manipulating objects;

5. Caring for himself/herself; and

6. Health and physical-being.

20 C.F.R. §§ 416.926a(b)(1)(i)-(vi). For a child to functionally equal a Listing, his or her impairment must result in "marked" limitations in two domains of functioning, or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(d). The relevant factors that will be considered in making this evaluation are: (1) how well the child initiates and sustains activities, including how much extra help he or she needs, and the effects of structured or supportive settings; (2) how the

5

child functions in school; and (3) how the child is affected by his or her medications or other treatment. 20 C.F.R. §§ 416.926a(a)(1)-(3).

A child has a "marked" limitation when the impairment "interferes seriously with [the] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). A "marked" limitation is one that is "more than moderate" but "less than extreme." *Id.* An "extreme" limitation exists when the impairment "interferes very seriously with [the] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). An extreme limitation may also seriously limit day-to-day functioning. *Id.*

If the child's impairment meets, medically equals, or functionally equals the Listing, and if the impairment satisfies the Act's duration requirement, then the child is considered disabled. 20 C.F.R. § 416.924(d)(1). If both of these requirements are not satisfied, then the child is not considered disabled. 20 C.F.R. § 416.924(d)(2).

### III. ANALYSIS

As a preliminary note, H.R.'s pertinent medical findings have been adequately summarized in the parties' briefs, *see* doc. 9, at PageID 414-19; doc. 14, at PageID 439-45, and the Court will not repeat them here. Where applicable, the Court will identify the medical evidence relevant to its decision.

#### A. First Assignment of Error

Plaintiff first argues that the ALJ failed to comply with 20 C.F.R. § 416.927(d)(2), by not according adequate weight to the opinion of H.R.'s treating physician, Dr. Pascoe. Specifically, Plaintiff argues that the ALJ erred not only by failing to applying the "treating physician rule" to

Dr. Pascoe's opinions, but also by failing to specify the reasons for not according controlling weight to his opinions. *See* doc. 9, at PageID 420-23.

Under the "treating physician rule," the ALJ is required to "generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because: 'these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone of from reports of individual examinations, such as consultative examinations or brief hospitalizations.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting 20 C.F.R. § 404.1527(d)(2)). Thus, an ALJ must give controlling weight to a treating source, so long as he or she finds the opinion well-supported by medically acceptable data and not inconsistent with other substantial evidence in the record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)).

Plaintiff argues that "none of Dr. Pascoe's **comments** were given any weight." Doc. 9, at PageID 421 (emphasis added). However, the law and the Social Security regulations recognize a difference between a treating physician's treatment notes or comments, and a treating physician's "medical opinion." *See* 20 C.F.R. § 404.1527(a)(2); *Bass v. McMahon*, 499 F.3d 506, 510 (6th Cir. 2007) (finding that a doctor's observations do not qualify as "medical opinions" under Social Security regulations, and "without more, are not the type of information from a treating physician which will be provided great weight under 20 C.F.R. § 404.1513(b)"); *Bowen*, 478 F.3d at 749 (noting that a treating doctor's general findings are relevant, but not controlling without a Residual Functional Capacity ("RFC") assessment). Moreover, application of the "treating physician rule"

7

is contingent upon a treating physician actually giving a medical opinion. Although the record contains Dr. Pascoe's treatment notes and comments, there was no "medical opinion" from him that the ALJ was required to evaluate pursuant to 20 C.F.R. § 404.1527. For instance, Dr. Pascoe's notes do not contain any opinion as to the severity of H.R.'s impairments, an assessment of the functional limitations imposed by those impairments, or a judgment as to whether H.R.'s impairments met or were functionally equivalent to a Listing. *Cf. Young v. Sec'y of H.H.S.*, 925 F.2d 146, 151 (6th Cir. 1990); *Varley v. Sec'y of H.H.S.*, 820 F.2d 777, 780 (6th Cir. 1987). Furthermore, Plaintiff does not point to an opinion by Dr. Pascoe -- or any other treating physician for that matter -- which were rejected by the ALJ. *See* doc. 8 at PageID 590-96. Dr. Pascoe's notes contain repeated diagnoses of ADHD and ODD, *see* PageID 382-98, but those diagnoses were accepted by the ALJ, who found them to be "severe impairments" in his disability analysis. *Accord* PageID 52. Accordingly, substantial evidence supports the ALJ's non-application of the "treating physician rule" to Dr. Pascoe's treatment notes.

In the same regard, Plaintiff argues that the ALJ violated the "good reasons rule" by "not giv[ing] any reliance to Dr. Pascoe's evaluations of [H.R.]" and "not really discuss[ing] them." Doc. 9, at PageID 421; *see also* PageID 423. However, the "good reasons rule," which is closely associated with the treating physician rule, is also inapplicable here because it "require[s] the ALJ to 'always give good reasons in [the] notice of determination or decision for the weight' given to the claimant's treating source's **opinion**." *Blakley*, 581 F.3d at 406 (quoting 20 C.F.R. § 416.927(d)(2)) (emphasis added). The Sixth Circuit has held that when a treating physician makes "no medical judgments, the ALJ ha[s] no duty to give such observations controlling weight or provide good reasons for not doing so." *Bass*, 499 F.3d at 510. Therefore, for the same reasons

8

as the "treating physician rule," the ALJ did not err in his non-application of the "good reasons rule" in his consideration of Dr. Pascoe's notes.

After a careful review of the record, the Court finds that the ALJ adequately considered Dr. Pascoe's notes in his decision, and properly weighed those notes in light of the other objective evidence of record. PageID 55-56, 360-409. The weight ultimately accorded to Dr. Pascoe's notes is reasonably supported by substantial evidence. Accordingly, the Court finds Plaintiff's first assignment of error to be unmeritorious.

### B. Second Assignment of Error

Plaintiff claims that H.R.'s impairments met or were functionally equivalent to three separate Listings: mental retardation (112.05), personality disorders (112.08), and ADHD (112.11).

Plaintiff bears the burden of proof that all of a Listing's criteria are met. *See Sullivan v. Zebley*, 493 U.S. 521, 530-32 (1990). An impairment that manifests only some of the criteria in a particular Listing, "no matter how severely, does not qualify." *Id.* at 530.

For the reasons that follow, the Court finds the ALJ's determination -- that Plaintiff did not meet her burden regarding any of these three Listings -- to be supported by substantial evidence.

#### 1. Listing 112.05 -- Mental Retardation

Listing 112.05 regards mental retardation, which is characterized by significantly sub-average general intellectual functioning with deficits in adaptive functioning. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.05.

> The required level of severity for this disorder is met when the requirements in A, B, C, D, E, or F are satisfied.

> A. For older infants and toddlers (age 1 to attainment of age 3), resulting in at least one of the appropriate age-group criteria in paragraph B1 of 112.02; or, for children (age 3 to attainment of age 18), resulting in at least two of the appropriate age-group criteria in paragraph B2 of 112.02; or
>
> B. Mental incapacity evidenced by dependence upon others for personal needs (grossly in excess of age-appropriate dependence) and inability to follow directions such that the use of standardized measures of intellectual functioning is precluded; or
>
> C. A valid verbal, performance, or full scale IQ of 59 or less; or
>
> D. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function; or
>
> E. A valid verbal, performance, or full scale IQ of 60 through 70 and:
>    1. For older infants and toddlers (age 1 to attainment of age 3), resulting in attainment of development or function generally acquired by children no more than two-thirds of the child's chronological age in either of paragraphs B1a or B1c of 112.02; or
>    2. For children (age 3 to attainment of age 18), resulting in at least one of paragraphs B2b or B2c or B2d of 112.02; or
>
> F. Select the appropriate age group:
>
> * * *
>    2. For children (age 3 to attainment of age 18), resulting in the satisfaction of 112.02B2a [(organic mental disorders)], and a physical or other mental impairment imposing an additional and significant limitation of function.

*Id*.

Here, the ALJ's finding that H.R. (who is older than age 3 and below age 18) does not meet the mental retardation Listing is supported by substantial evidence. In November 2006, H.R.'s full scale IQ was 89. PageID 298. In early 2008, H.R. passed all standardized tests, which showed "low average to average performance." PageID 250. In both instances, her general intelligence quotient and testing results exceeded the scores necessary to meet any of the Listing's criteria. *Id*.

In addition, H.R.'s school determined that she was ineligible for special education classes and noted the contrast between her performance, which was below grade level, with her average intellectual ability and low-average-to-average performance on a standardized test. PageID 244-52. Dr. Pascoe recited the school's findings that H.R.'s reading and higher thinking skills were "delayed less than a year"; her writing skills were "appropriate for age to delayed more than a year"; and her arithmetic, language and memory skills were "appropriate for her age." PageID 364. Likewise, her imagination, musical ability and sense of humor were all described as appropriate. *Id.* In the area of mental energy controls, processing controls and production controls, H.R.'s teachers reported fewer symptoms than her parents. *Id.*

School psychologist, James Huebner, M.Ed., evaluated H.R. in June and July of 2006. PageID 56. Plaintiff admitted that H.R. had not been taking her medication at the time of the evaluation. PageID 294-95. Nevertheless, Dr. Huebner found that H.R. was fully oriented and exhibited normal memory. *Id.* He assigned H.R. a Global Assessment of Functioning (GAF) score of 58, which is not suggestive of disability.[6] PageID 295.

Although some evidence in the record arguably supports Plaintiff's position, substantial evidence nevertheless supports the ALJ's finding that H.R. does not meet or functionally equal the elements of Listing 112.05.

---

[6]"GAF," Global Assessment of Functioning, is a tool used by healthcare professionals to assess a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness. It is, in general, a snapshot of a person's "overall psychological functioning" at or near the time of the evaluation. *See Martin v. Comm'r*, 61 F.App'x 191, 194 n.2 (6th Cir. 2003); *see also* DSM-IV at 32-34. Individuals with scores of 51-60 are classified as having "moderate symptoms ... or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." DSM-IV at 34. *Accord Penny v. UPS*, 128 F.3d 408, 415 (6th

### 2. Listing 112.08 -- Personality Disorder

Listing 12.08 regards personality disorders and provides the following:

A personality disorder exists when personality traits are inflexible and maladaptive and cause either significant impairment in social or occupational functioning or subjective distress. Characteristic features are typical of the individual's long-term functioning and are not limited to discrete episodes of illness. The required level of severity for these disorders is met when the requirements in both A and B are satisfied.

A. Deeply ingrained, maladaptive patterns of behavior associated with one of the following:

1. Seclusiveness or autistic thinking; or
2. Pathologically inappropriate suspiciousness or hostility; or
3. Oddities of thought, perception, speech and behavior; or
4. Persistent disturbances of mood or affect; or
5. Pathological dependence, passivity, or aggressivity; or
6. Intense and unstable interpersonal relationships and impulsive and damaging behavior;
7. Pathological perfectionism and inflexibility;

and

B. Resulting in at least two of the following:
1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.08; 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.02(B)(2).

Plaintiff contends that H.R. suffers from "pathological dependence, passivity or aggressiveness." Doc. 9 at PageID 424. However, the record does not support that H.R. has a deeply ingrained, long-term maladaptive pattern of behavior required by Listing 112.08. Dr. Pascoe noted that despite H.R.'s behavioral issues, she easily became involved in activities,

---

Cir. 1997) ("moderate difficulty" does not rise to the level of disability).

enjoyed playing with other children, and was "likable" and "engaged" during the appointment. PageID 55-56, 363-64. The ALJ also determined that H.R.'s symptoms improved with medication, even with reports of her parents' failure to consistently administer the medication. PageID 55-56, 77, 382, 384, 387, 393, 397.

Sarah Greenwell, Psy.D. evaluated H.R. in September 2006. PageID 279-83. Dr. Greenwell reported that H.R. was fully oriented, "cheerful overall," and exhibited an appropriate affect and mood, appropriate thought content, fair judgment, and good impulse control. *Id*. Dr. Greenwell concluded that H.R. exhibited behaviors consistent with ODD and ADHD, predominately inattentive type. PageID 282. Dr. Greenwell also found that H.R. suffered from problems relating to her social environment and educational problems, but had normal memory abilities and was able to maintain focus. She assigned H.R. a GAF of 51, indicative of moderate (less than marked) limitations. *Id.*

Similarly, Gordon Harris, Ph.D. evaluated H.R. in November 2006, and reported that, during the psychological testing, H.R. was not hyperactive and exhibited good attention and concentration, although her mind seemed to wander "at times." PageID 298. Dr. Harris also indicated that H.R. exhibited good attitude and motivation and had difficulty understanding some of the subtests "at first, but this was not extensive." *Id.* Dr. Harris concluded that H.R.'s "mother report[ed] a very negative picture of her functioning" but that his impression from dealing with H.R. during the interview, as well as her IQ scores, "suggest that her daily functioning is not as low as her mother reports." *Id.* Dr. Harris assigned a current GAF of 58 -- indicative of moderate limitations. PageID 299.

Again, although school records and other notes indicate that H.R. has behavioral and self-control issues, *see*, *e.g.*, PageID 185-86, 188, 199, there is no longitudinal evidence in the record from which the ALJ could determine that she has "deeply ingrained, maladaptive patterns of behavior" as required by the "A" criteria, or the marked restrictions required by the "B" criteria. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.08. As such, substantial evidence supports the ALJ's finding that H.R. does not meet or functionally equal the elements of Listing 112.08.

### 3. ADHD (112.11)

To meet Listing 112.11, H.R. must have medically documented findings of the following "A" criteria:

1. Marked inattention;
2. Marked impulsiveness; and
3. Marked hyperactivity.

*See* 20 C.F.R. Part 404, Subpt. P, App. 1, §112.11. Further, H.R. must have a "marked" impairment in at least two of the following "B" criteria:

1. Age-appropriate cognitive/communicative function documented by medical findings and including if necessary the results of appropriate standardized psychological tests; or
2. Age-appropriate social functioning, documented by history and medical findings; or
3. Age-appropriate personal functioning documented by history and medical findings; or
4. Maintaining concentration, persistence, or pace.

*Id.*

Plaintiff alleges that H.R. has "marked" impairments in attention, impulsiveness, and hyperactivity under Part A, as well as impairments in cognitive and social functioning, personal functioning, and in concentration, persistence, or pace under Part B. Doc. 9, at PageID 425.

14

Plaintiff relies exclusively upon Dr. Pascoe's treatment notes to support her arguments that H.R. meets or functionally equals this Listing. *Id*.

As discussed above, however, Dr. Pascoe's treatment notes do not amount to substantial evidence that H.R.'s limitations were "marked" in the areas of attention, impulsiveness, and hyperactivity. Moreover, no medical source has categorized H.R.'s limitations as "marked" in those three areas, and no examining or treating source, or non-examining consultant has ever opined that H.R. met or equaled this or any other Listing. Countervailing evidence discussed by the ALJ -- including school records, medical opinions, and some of Plaintiff's own testimony and statements -- supports the ALJ's determination that H.R.'s impairments were "less than marked" in the areas of attention, impulsiveness and hyperactivity, particularly after H.R. began treatment and took medication. *See* PAGEID 57.

The ALJ reasonably found that H.R. had less than marked limitations in the domains of acquiring and using information, attending and completing tasks and interacting and relating to others. Plaintiff cannot show that the ALJ committed reversible error in his evaluation of functional equivalence, and she has not demonstrated that the ALJ lacked substantial evidence to support his decision that Plaintiff had less-than-marked limitations in the functional domains at issue. Even though evidence may exist to support a contrary conclusion, substantial evidence supports the Commissioner's decision and accordingly, the Court must affirm. *See Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) ("The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts"); *see also Collins v. Astrue*, 373 F.App'x 552, 556 (6th Cir. 2010) ("even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as

substantial evidence supports the conclusion reached by the ALJ" then the ALJ's decision should be upheld).

### C. Third Assignment of Error

Although Plaintiff does not identify a third assignment of error, she nevertheless suggests that the ALJ erred by not having an M.E. testify at the administrative hearing. Doc. 9, at PageID 425. The Commissioner argues that this assignment of error is waived because it is a cursory allegation without any argument or cited authority. Doc. 14, at PageID 452 (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)). The Court, nevertheless, in the interest of justice, has considered Plaintiff's allegation.

The ALJ is not required to solicit M.E. testimony. *See Simpson v. Comm'r of Social Sec.*, 344 F.App'x 181, 189 (6th Cir. 2009). Rather, it is within the ALJ's discretion to review the complete record and determine whether a M.E. is necessary. *Id*. Here, the ALJ had before him evidence of H.R.'s medical history and testimony as to her daily activities, as well as records and reports from treating sources and state agency examiners. Given the breadth and depth of the evidence in the record, and this Court's deference to the ALJ in deciding whether the record is fully developed, the Court finds the ALJ did not err in failing to call an M.E. to testify at the administrative hearing. Moreover, the ALJ's decision not to do so is supported by substantial evidence. *See id*.

## IV. RECOMMENDATION

For the foregoing reasons, the Court finds Plaintiff's assignments of error to be unavailing. The ALJ's decision is supported by substantial evidence and should be affirmed.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The Commissioner's final non-disability finding be found supported by substantial evidence, and **AFFIRMED;** and

2. This case be **CLOSED**.

August 17, 2012                                        **s/Michael J. Newman**
                                                       United States Magistrate Judge

### NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B)(C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).